**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DYSHAWN UNDERWOOD,**

**Plaintiff,**

**v.**

**BLUE LEAF RESIDENTIAL MANAGEMENT, LLC, et al.,**

**Defendants.**

**Case No. 2:25-cv-223**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Vascura**

**OPINION AND ORDER**

Plaintiff Dyshawn Underwood moves to dismiss (Doc. 75) defendant Cyclone Columbus Park 250 LLC's two counterclaims against her and her child, K.U. (Doc. 67, #996–97). The first counterclaim alleges that Underwood and K.U. are liable for breach of contract because they demanded a jury trial in this action. According to Cyclone—Underwood's former landlord—that breaches the jury-trial waiver clause of her lease agreement. The second seeks a declaration under 28 U.S.C. § 2201(a) that Underwood violated the agreement and asks the Court to strike her jury demand.

For the reasons explained below, the Court **GRANTS** Underwood's motion to dismiss (Doc. 75) and **DISMISSES WITHOUT PREJUDICE** Cyclone's breach-of-contract counterclaim (Doc. 67, #997). The Court additionally exercise its discretion to **DECLINE** Cyclone's request for declaratory judgment under 28 U.S.C. § 2201(a).

## BACKGROUND[1]

While this case involves a fact-intensive landlord–tenant dispute, the background needed to resolve the present motion is narrow. Underwood asks the Court to dismiss Cyclone's two counterclaims, both of which rely on only a single clause of the parties' lease agreement: a jury-trial waiver. (Doc. 67, #996–97; Doc. 75, #1030). While a more thorough discussion of the underlying housing dispute might be necessary later on, the Court here addresses only those allegations relevant to resolving the jury-waiver issue the parties raise. (Doc. 75).

At the end of June 2023, Underwood signed a residential lease agreement with Cyclone to rent an apartment on College Park Drive in Columbus, Ohio. (Doc. 56, #893 (Pl.'s Ex. 1)).[2] The unit Underwood rented was just one of many in the College Park Apartment complex, which Cyclone owns. (Doc. 56, #874; Doc. 67, #981).

---

[1] Because this matter is before the Court on Underwood's Motion to Dismiss (Doc. 75), the Court must accept the well-pleaded allegations in the counterclaim as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). So while the Court relies on the counterclaim's allegations, brief as they may be, it reminds the reader that they are just that—allegations.

[2] Cyclone claims it attached the lease agreement as Exhibit A to its amended counterclaim. (Doc. 67, #996). But strangely, the amended counterclaim is not accompanied by any exhibits. (*See generally id.*). Perhaps the explanation lies in the several rounds of amendments the parties have made to their pleadings throughout these proceedings. (Docs. 21, 42, 56, 67). Cyclone included the agreement in its initial counterclaim (Doc. 34) but did not attach the agreement seven months later when it amended that counterclaim (Doc. 67). Ordinarily, this would pose a problem for Cyclone because amended pleadings nullify prior pleadings. *Drake v. City of Detroit*, 266 F. App'x 44, 448 (6th Cir. 2008). But, fortunately for Cyclone, Underwood attached a copy of the agreement to her amended complaint, and both parties agree that that copy "speaks for itself." (Doc. 67, #982). So, the Court will consider the contents of the lease agreement attached as Exhibit 1 to Underwood's amended complaint. (Doc. 56, #893); Fed. R. Civ. P. 10(c); *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

Underwood's lease agreement contained the typical fare: the lease term, rent, renewal provisions, utility responsibilities, and security deposit amount. (Doc. 56, #893). The agreement itself was only eight pages long, but it was accompanied by over thirty pages of supplemental forms, agreements, and addenda. (*Id.* at #893–931). These covered subjects such as pet rent, service animal procedures, bedbug removal, and mold prevention. (*Id.*). All said, the agreement and its associated documents included well over one hundred clauses and required Underwood to sign in fifty-two different places. (*Id.*). Most relevant to the issue currently before the Court, the lease agreement's "miscellaneous" clause contained a jury-trial waiver:

> **WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute[,] common law, and/or related to this Lease Contract shall be to a judge and not a jury.

(*Id.* at #898).

Not long after signing the lease, Underwood moved into the unit with her child, K.U. (*Id.* at #875, 893; Doc. 67, #982). The parties disagree about what happened next. Underwood says her apartment had persistent leaks, mold, and cold drafts that, when Cyclone failed to timely make repairs, aggravated K.U.'s respiratory disabilities—asthma, bronchiolitis, and pulmonary valve stenosis. (Doc. 56, #879). That aggravation, she claims, triggered several distressing hospital visits. (*Id.*). Cyclone denies those allegations. (*See* Doc. 67, #980–97).

What the parties agree on is that Underwood vacated the apartment and then sued Cyclone both on her own behalf and on K.U.'s behalf as his guardian. (Compl., Doc. 4, #82). She raised claims under the Fair Housing Act of 1968 for discrimination

and retaliation and claims under Ohio law for disability discrimination, negligence per se, wrongful termination of services and utilities, and breach of contract. (*Id.* at #94–100). She also demanded a jury trial "on all legal issues." (*Id.* at #101).

From there, the case took a few procedural twists and turns. Cyclone answered and itself demanded a jury trial. (Doc. 14). But it quickly amended its answer to remove that demand, opting instead to raise as an affirmative defense its reliance on the lease agreement's jury-waiver clause. (Doc. 19–22). Then, not long after, the Court granted—over Underwood's opposition—Cyclone's motion for leave to file counterclaims for breach of contract and declaratory judgment. (Docs. 26–34). Cyclone's counterclaims ask the Court to: (1) issue a declaration that Underwood waived her right to a jury trial by signing the lease agreement, (2) strike Underwood's jury demand and set the case for a bench trial, and (3) award Cyclone the attorney's fees it incurred in bringing the counterclaim. (Doc. 34, #454–55; *accord* Doc. 67, #997).

Underwood moved to dismiss the counterclaims and, a day later, answered them. (Docs. 37, 38). Cyclone responded. (Doc. 39). Underwood replied. (Doc. 43). But before the Court could rule on Underwood's motion to dismiss, she sought leave to amend her complaint to add new defendants. (Doc. 48; Am. Compl. Doc. 56). The Court granted that motion over Cyclone's opposition. (Cyclone Resp. Op., Doc. 49; Order, Doc. 55). So the parties started the pleading-and-motion two-step from the top. Cyclone answered Underwood's amended complaint and refiled its counterclaims. (Doc. 67). Underwood again moved to dismiss (Doc. 75) and answered Underwood's

counterclaims (Doc. 76). Cyclone responded to the motion to dismiss. (Doc. 78). Underwood replied. (Doc. 82).[3]

And with that, this matter is ripe for the Court's review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "[pleading] must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430. But that grace extends only so far. The Court cannot accept "naked assertions," legal conclusions, or "formulaic recitation[s] of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## LAW AND ANALYSIS

Underwood asks the Court to dismiss Cyclone's counterclaims for four reasons: (1) K.U. could not have breached the lease agreement because he was not a party to that agreement, (2) Cyclone failed to plausibly allege that it performed under the

[3] The Court denied Underwood's first motion to dismiss as moot. (*See* 7/7/26 Not. Ord.)

lease agreement or that it suffered damages from Underwood's jury demand, (3) Underwood did not knowingly or voluntarily waive her right to a jury trial, and (4) the factors articulated in *Grand Trunk Western R.R. Co. v. Consolidated Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984), weigh in favor of declining Cyclone's request for declaratory judgment. (Doc. 75, #1031–39). The Court agrees with the first, second, and fourth arguments, so it doesn't address the third.

**A. The Jury-Trial Waiver Does Not Apply to K.U.**

Underwood contends that the Court must dismiss Cyclone's counterclaims as they relate to K.U. because K.U. was not a party to the lease agreement. (Doc. 75, #1031). In response, Cyclone asserts that Underwood has made conflicting representations: she denies that K.U. was a party to the lease agreement while simultaneously maintaining a claim against Cyclone (on K.U.'s behalf) for breaching that same agreement. (Doc. 78, #1051–52). Instead of articulating why this ostensible contradiction matters for the present motion, Cyclone instead opines that "Plaintiffs may be subject to sanctions under Federal Rule 11." (*Id.* at #1052). The Court is not persuaded, either as to the prospect of sanctions[4] or as to the viability of Cyclone's counterclaims against K.U.

---

[4] The Court reminds the parties that they are bound by Rule 11(c)'s "mandatory" and "absolute" provisions. *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997). If they wish to seek relief under that Rule, they must make a standalone motion for sanctions and refrain from presenting it to the Court before first providing the motion's target twenty-one days to cure the allegedly offending conduct. *Id.*; Fed. R. Civ. P. 11(c). Even then, "[t]he imposition of sanctions under Rule 11(b) is disfavored and discretionary." *Exotic Leasing, LLC v. 7th Gear Exotics LLC*, 2:24-cv-3036, 2026 WL 2727897, at *3 (S.D. Ohio Sep. 16, 2026). Rule 11 sanctions are appropriate "to punish aggressive tactics that far exceed zealous

Cyclone says the lease agreement "speaks for itself," so start there. (Doc. 67, #982). The agreement lists only Underwood—not K.U.—in its "parties" clause:

> **1. PARTIES.** The Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*: Dyshawn Underwood[,] and *us*, the owner: Cyclone Columbus Park 250 LLC[,] *(name of apartment community or title holder)*. … The terms "you" and "your" refer to all residents listed above.

(Doc. 56, #893). That is, the lease applies to all "residents," but "residents" refers only to those persons "signing the Lease Contract." (*Id.*). And only Underwood signed. (*Id.* at #900). Consistent with that, whenever the agreement instructed her to list all "Residents," she penned only her own name. (*E.g.*, *id.* at #911). She listed K.U., on the other hand, only as an "other occupant[] not signing the Lease Contract," another category the lease offered. (*Id.* at #893). Her decision to identify him that way also makes sense—K.U. was "under one year old" at the time. (Doc. 75, #1031). So, under the agreement's plain language, K.U. was not a party. That, it turns out, is fatal to Cyclone's counterclaim, at least as it relates to K.U.

Ohio has long recognized the "familiar principle that contracts bind only the parties who have executed them." *Blunk v. Dennison Water Supply Co.*, 73 N.E. 210, 211 (Ohio 1905). And more recent Ohio appellate opinions have taken that principle as a given: "It goes without saying that a contract cannot bind a nonparty." *E.g.*, *Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 81 N.E.3d 499, 503 (Ohio 10th Dist. 2017) (quoting *Equal Emp. Opportunity Comm'n v. Waffle House, Inc.*, 534

---

advocacy," not to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Followell v. Mills*, 317 F. App'x 501, 513 (6th Cir. 2009) (quoting *McGhee v. Sanilac Cnty.*, 934 F.2d 89, 92 (6th Cir. 1991)).

U.S. 279, 294 (2002)); *Asia-Pac. Futures Rsch. Symp. Plan. Comm. v. Kent State Univ.*, 63 N.E.3d 780, 785 (Ohio 11th Dist. 2016); *Marietta v. Prof. Serv., Indus., Inc.*, 2025-Ohio-1530, ¶ 57 (4th Dist.). Because K.U. was not a party to the lease agreement, he was not bound by its terms, including the jury-trial waiver clause. Thus, the Court dismisses Cyclone's breach-of-contract counterclaim against K.U.

The potential contradiction Cyclone notes—that K.U., a non-party to the lease agreement, is suing Cyclone for breaching that agreement—does not compel a different result. (Doc. 78, #1051–52). Even if the Court accepts this argument on its face, it is not a reason to allow Cyclone's counterclaim to move forward. Nowhere does Cyclone allege any facts or articulate any arguments that suggest K.U. was a party to the lease agreement. And it almost certainly couldn't. As noted above, the lease agreement's plain text seems to foreclose that factual reality. What Cyclone's "contradiction" argument really gets at is one potential reason to dismiss K.U.'s own breach-of-contract claim *against* Cyclone. But Cyclone has not moved to dismiss that claim, so the Court is presently in no position to determine whether it is valid. For now, it is enough to say that a potential defect in K.U.'s claim against Cyclone does not remedy the fatal defect in Cyclone's counterclaim against K.U. Without anything to show that K.U. was a party to the lease agreement, the Court cannot find that he was plausibly bound by its terms.

### B. Cyclone Does Not Adequately Allege that It Performed Under the Lease Agreement.

Turn next to Cyclone's breach-of-contract counterclaim against Underwood. This claim falls within the Court's supplemental jurisdiction,[5] so Ohio law supplies the substantive breach-of-contract elements while federal law supplies the pleading standard Cyclone must meet. *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1091–92 (S.D. Ohio 2021). Underwood says Cyclone did not allege any facts that show it performed under the lease agreement or that it suffered damages from her jury demand. (Doc. 75, #1031–32; *accord* Doc. 67, #997); *see also Iqbal*, 556 U.S. at 678. The Court agrees with the former and dismisses the counterclaim, so it does not reach the latter.

Start with Ohio law. A breach-of-contract claim has four elements: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach." *Fox Consulting Grp., Inc. v. Mailing Servs. of Pittsburgh, Inc.*, 2022-Ohio-1215, ¶ 8 (Ohio 1st Dist.). Underwood targets the second element, performance. (Doc. 75, #1031–32). To prove that element, a plaintiff must show that they fully or substantially performed their side of the bargain. 18 *Ohio Juris., Contracts* § 183 (3d ed. 2026); *Ohio Farmers' Ins. Co. v. Cochran*, 135 N.E. 537, 539 (Ohio 1922). Substantial performance exists where the

---

[5] Underwood sued Cyclone under the Fair Housing Act, which is a federal law, 42 U.S.C. § 3601–3619, so this action falls within the Court's original jurisdiction under 28 U.S.C. § 1331. Cyclone's state-law breach-of-contract counterclaim arises from the lease agreement that governed the landlord–tenant relationship between it and Underwood, so that counterclaim "form[s] part of the same case or controversy" as Underwood's Fair Housing Act claims, which brings it within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

parties obtain "what the contract called for" even though they did not fully perform "every particular" the contract contemplated. *State v. Brand*, 442 N.E.2d 805, 811 n.4 (Ohio 1st Dist. 1981); *Strawser v. Vulic*, No. 92AP-1640, 1993 WL 238844, at *7 (Ohio 10th Dist. June 22, 1993). A contract party claiming substantial performance must additionally allege that they made "an honest effort … to perform" and that their failure to do so was not the product of "a willful omission." *Ashley v. Henahan*, 47 N.E. 573, 569 (Ohio 1897). Whether a party has substantially performed is a question of degree, highly dependent on the facts of a given case. *Strawser*, 1993 WL 238844, at *7.

With the state substantive law established, the question is whether Cyclone pleaded "factual content that allows the court to draw the reasonable inference that [Underwood] is liable" for breach of contract. *Iqbal*, 556 U.S. at 678. In other words, has Cyclone pleaded facts creating a plausible inference that all four of the elements above are met? The Court starts and ends with the second element—which requires Cyclone to prove that it has performed. The exact contours of what Cyclone would need to allege to satisfy that element turn out not to matter. That is because Cyclone's counterclaim is devoid of *any* facts about its own performance—whether full or substantial—under the lease agreement. The counterclaim is a single sentence, alleging only Underwood's breach: "In making a demand for a jury trial and subsequently refusing to waive jury trial, Plaintiffs are in breach of the parties' Apartment Lease Contract." (Doc. 67, #997). Nowhere does Cyclone lay out whether and to what degree it performed under the lease agreement. Because Cyclone has not

alleged facts sufficient to plausibly plead one of the elements of its breach-of-contract counterclaim, the Court must dismiss it. *Iqbal*, 556 U.S. at 678; *Robbins*, 854 F.3d at 319.

Cyclone's response is not persuasive. It asserts that its "performance is obvious" because Underwood alleges that she and K.U. "resided in the apartment governed by the Apartment Lease Contract for more than nine months." (Doc. 78, #1053). In other words, Cyclone wants to adopt Underwood's allegations as its own and it thinks those allegations are enough to avoid dismissal. True, "[a] statement in a pleading may be adopted by reference … in any other pleading or motion." Fed. R. Civ. P. 10(c). But Rule 10(c) contemplates some type of affirmative statement; it does not allow a pleading to silently incorporate another party's writings. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). Here, Cyclone's counterclaim does not reference Underwood's complaint or the factual allegations it contains. And Cyclone's answer specifically denies allegations necessary to establish the nine-month residency timeline it purports to rely on for its counterclaim. (*Compare* Doc. 54, #883, ¶ 54, *with* Doc. 67, #987, ¶ 54). Given that silence and denial, the Court is not inclined to say that Cyclone's counterclaim incorporated Underwood's factual allegations by reference.

Even if Cyclone had successfully incorporated Underwood's factual allegations into its counterclaim, it is hardly "obvious" that Cyclone substantially fulfilled its duties under the lease agreement. (Doc. 78, #1053). Cyclone says it kept up its end of the bargain by providing Underwood with a place to live for nine months. (*Id.*). But,

as Underwood points out (Doc. 82, #1065), the eight-page, forty-four-clause agreement and its thirty pages of appended material contemplated more than that, as does Ohio law. (E.g., Doc. 56, #898 ("32. Responsibilities of Owner.")); Ohio Rev. Code § 5321.04. So without further allegations, the Court finds that Cyclone has not plausibly pleaded its breach-of-contract counterclaim against Underwood. It therefore dismisses that counterclaim. But, because Cyclone could address these deficiencies through additional allegations, the Court will dismiss the counterclaim against Underwood without prejudice.[6]

**C. The Court Declines Cyclone's Request for Declaratory Judgment.**

All that's left, then, is Cyclone's request for declaratory judgment under 28 U.S.C. § 2201(a). On that front, Cyclone wants the Court to declare that Underwood "waived [her] right to a jury trial … pursuant to the parties' Apartment Lease Contract." (Doc. 67, #997).

This request is procedurally awkward. Typically, when a party wants the Court to "strike Plaintiff's jury demand," as Cyclone does (*id.*), it asks the Court to do just that by moving under Federal Rule of Civil Procedure 12(f) or 39(a)(2). *E.g.*, *Starnes Fam. Off., LLC v. McCullar*, 765 F. Supp. 2d 1036, 1055 (W.D. Tenn. 2011) ("A motion to strike a jury demand is properly brought under Rule 12(f)."); *Ease Logistics Servs., LLC v. Zeatoon Inc.*, No. 2:25-cv-482, 2025 WL 3706383, at *1 (S.D.

[6] That said, if the point of the breach action is principally to enforce the jury-trial waiver, Cyclone may wish to consider, in deciding whether to proceed with an amendment, the implications of the Court's ruling on Cyclone's declaratory judgment counterclaim against K.U.

Ohio Dec. 22, 2025) (applying Rule 39(a)(2)). It is at best atypical, and perhaps unprecedented, for a party to seek enforcement of a jury-waiver clause by requesting a declaratory judgment that, phrasing it in the Sixth Circuit's terms, would neither "settle the controversy" nor offer a "better or more effective" "alternative remedy" than simply moving to strike the demand. *Grand Trunk W. R.R. Co.*, 748 F.2d at 326.

Though not expressly forbidden by § 2201(a)'s text, Cyclone's approach is akin to using a screwdriver to sink a nail. It's perhaps possible, just not particularly practical. Imagine if parties started implementing Cyclone's approach more robustly. For example, a plaintiff fails to respond in a timely fashion to discovery requests, so the defendant files a counterclaim for declaratory relief asking the Court to order the plaintiff to answer the discovery. Or a defendant agrees to produce a deponent at a particular location, and then later retracts that agreement, so the plaintiff seeks declaratory relief as to where the deposition will occur. It borders on ludicrous. Typically, courts award declaratory relief only when a party wants an order commanding someone to do something *outside of* the present litigation. For example, an insured often seeks a declaratory judgment when they want a court to order their insurer to defend them in some *other* action. *See, e.g.*, *McBride v. Acuity*, 510 F. App'x 451, 451–52 (6th Cir. 2013). But when a party wants an order relating to how the instant litigation will proceed, it should simply move the court for that relief—e.g., move to compel another party to fulfill its discovery obligations—not seek declaratory relief.

Bottom line, the Court will exercise its "unique and substantial discretion" under § 2201(a) to decline Cyclone's request for declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). That said, if Cyclone believes, notwithstanding what the Court said above about the breach claim, that there are adequate grounds on which to strike the plaintiffs' jury demand, it should file a motion under Rule 12(f) or 39(a)(2) to that effect and the Court will consider it.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Underwood's motion to dismiss (Doc. 75) and **DISMISSES WITHOUT PREJUDICE** Cyclone's breach-of-contract counterclaim (Doc. 67, #997). The Court additionally exercise its discretion to **DECLINE** Cyclone's request for declaratory judgment under 28 U.S.C. § 2201(a). (*Id.*).

**SO ORDERED.**

November 10, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**